LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Proposed Attorneys for Debtor

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No. 23-10356-abl |
| | Chapter 11 |
| ARUZE GAMING AMERICA, INC., | |
| Debtor. | Date:  OST REQUESTED |
| | Time:  OST REQUESTED |

**DEBTOR'S EMERGENCY MOTION FOR ENTRY OF INTERIM**
**AND FINAL ORDERS (A)(I) AUTHORIZING THE USE OF ALLEGED**
**CASH COLLATERAL, AND (II) GRANTING ADEQUATE**
**PROTECTION, AND (B) SCHEDULING A FINAL HEARING**

Aruze Gaming America, Inc., a Nevada corporation, as debtor and debtor in possession (the "Debtor"), submits its motion (the "Motion") for the entry of interim and final orders: (a)(i) authorizing the use of alleged cash collateral pursuant to the terms of the interim order (the "Interim Order") attached as **Exhibit 1**, and pursuant to a budget (the "Budget") attached as **Exhibit 2**, pending a final hearing (the "Final Hearing"); and (ii) granting related relief, including authorization to make monthly ongoing adequate protection to the Bank Group (as hereinafter defined), which is the Debtor's senior secured lender, and (b) scheduling a Final Hearing for final approval of the Motion.  This Motion is made and based on the points and authorities herein, the *Omnibus Declaration of Yugo Kinoshita in Support of Initial Emergency Motions and Related Relief* (the "Omnibus Declaration"), the papers and pleadings on file herein, judicial notice of which are requested, and any arguments of counsel made at any hearings.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

**LARSON & ZIRZOW, LLC**
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

## I. Summary of Requested Relief

1.      The Debtor requests approval on an emergency, interim basis of the use of ***alleged*** cash collateral to allow for the continued operation, preservation and maintenance of its business pending a final hearing, but pursuant to a Budget and subject to the payment of an Adequate Protection Payment to the Bank Group (as both terms are hereinafter defined).  Additionally, the Debtor requests that the Court schedule a Final Hearing not sooner than fifteen (15) days after any interim hearing on the Motion to consider final approval thereof.

## II. Introduction

2.      The Debtor is a developer of gambling entertainment solutions for the global casino market.  Additional information regarding the Debtor's Business and its reasons for filing for bankruptcy protection are in the Omnibus Declaration.

## III. Jurisdiction and Venue

3.      On February 1, 2023 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing its bankruptcy case (the "Chapter 11 Case").  The Debtor is authorized to continue operating its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 1001(b)(1).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Pursuant to LR 9014.2, the Debtor consents to the entry of final orders and judgments by the bankruptcy judge.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408(1) and 1409(a).

## IV. Statement of Facts

5.      The Debtor's Omnibus Declaration includes a description of the Debtor's history and financings with its various secured creditors, as well as various associated exhibits, and is incorporated herein by reference.

## V. Legal Argument

**A.      Standard of Decision.**

6.      Section 363 of the Bankruptcy Code provides that a debtor in possession "may

not use, sell, or lease cash collateral under paragraph (1) of this subsection unless--(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2); Sears Savings Bank v. Tucson Industrial Partners, 129 B.R. 614 (B.A.P. 9th Cir. 1991).

7.     Section 363(a) of the Bankruptcy Code defines "cash collateral" as:

Cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

8.     Section 363(e) of the Bankruptcy Code provides, in relevant part, that "at any time, on request of an entity that has an interest in property used . . . or proposed to be used, by the trustee, the court, with or without a hearing, shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).

9.     Section 363(c)(3) of the Bankruptcy Code permits a preliminary hearing and order for use of cash collateral until a final hearing on the matter can be held.  See 11 U.S.C. § 363(c)(3).  In addition, this section states that "[t]he court shall act promptly on any request for authorization under paragraph 2(B) of this subsection."  Id.  Bankruptcy Rule 4001(b)(2) specifically authorizes the bankruptcy court to conduct a preliminary hearing and authorize the use of cash collateral as necessary to avoid immediate irreparable harm to the estate.

10.    Cash collateral includes property "in which the estate and an entity other than the estate have an interest."  11 U.S.C. § 363(a).  Whether an entity has a security interest in a particular type of property is generally determined by state law.  Butner v. United States, 440 U.S. 48, 57 (1979).  The "interest" set forth in section 363(a) refers to a valid and perfected security interest between the parties that secures the cash collateral.  Waldron v. Nw. Acceptance

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

3

Corp. (In re Johnson), 62 B.R. 24, 28-29 (B.A.P. 9th Cir. 1986); In re Prospect Studios, L.P., 478 B.R. 367, 371 (Bankr. W.D. Mo. 2012); In re Las Vegas Monorail Co., 429 B.R. 317, 328 (Bankr. D. Nev. 2010).

11.    Section 363(p) of the Bankruptcy Code states that "[i]n any hearing under this section—(1) the trustee has the burden of proof on the issue of adequate protection; and (2) the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest." 11 U.S.C. § 363(p).  This section, particularly paragraph (2), requires the creditor to establish the existence and the extent of its interest in the property it claims as cash collateral.  In re Las Vegas Monorail Co., 429 B.R. at 328 (citing Textron Fin. Corp. v. Rebel Rents, Inc. (In re Rebel Rents, Inc.), 307 B.R. 171, 183 (Bankr. C.D. Cal. 2004); and Kondik v. Ebner (In re Standard Foundry Prods., Inc.), 206 B.R. 475, 478 (Bankr. N.D. Ill. 1997)).

12.    A party seeking to establish the "extent" of its interest in property under section 363(p)(2) of the Bankruptcy Code must satisfy a two-prong test:  "First, as a preliminary matter, the party must prove that it holds a perfected security interest in post-petition revenues to which its liens still rightly attach.  Second, a party must prove the amount of money to which its liens attach."  Id. (citing Chequers Inv. Assocs. v. Hotel Sierra Vista Ltd. P'ship (In re Hotel Sierra Vista Ltd. P'ship), 112 F.3d 429, 434 (9th Cir. 1997); In re Rebel Rents, 307 B.R. at 183 (holding that revenues related to postpetition receivables from equipment leases were not cash collateral because proceeds, under pre-2001 definition, did not extend to such receivables); In re GOCO Realty Fund I, 151 B.R. 241, 252 (Bankr. N.D. Cal. 1993) (holding that creditor did not have a perfected security interest in rental proceeds transferred to an attorney as a retainer)).

13.    Section 552(a) of the Bankruptcy Code states the general rule that a prepetition security interest does not extend to property acquired by the estate after the filing of the petition. Section 552(b) provides an exception for some proceeds, product, offspring, rents or profits of encumbered property.  Specifically, section 552 provides, in relevant part, as follows:

> (a)    Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b)(1) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, then such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(a) and (b)(1).

14.     The exception in section 552(b)(1) of the Bankruptcy Code applies "only if the security agreement expressly provides for an interest in such property, and the interest has been perfected under 'applicable nonbankruptcy law.'"   United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 374 (1988).   Section 552(b) is an exception to bankruptcy's general rule, found in section 552(a), that after-acquired clauses in security agreements are not given effect in bankruptcy even though authorized by Article 9 of the UCC. See UCC § 9-204(a); In re Las Vegas Monorail Co., 429 B.R. at 327.   Section 552(a) is intended to allow a debtor to gather into the estate as much money as possible to satisfy the claims of all creditors.   Section 552(b) balances the Bankruptcy Code's interest in freeing the debtor of prepetition obligations with a secured creditor's rights to maintain a bargained-for interest in certain items of collateral.   Section 552(b) provides a "narrow exception" to the general rule in section 552(a).   In re Bering Trader, Inc., 944 F.2d at 502.

15.     To qualify as "proceeds" pursuant to section 552(b) of the Bankruptcy Code, the property must "necessarily derive[ ] from the sale, exchange or other dispensation of other encumbered property."   In re Bering Trader, 944 F.2d at 502.   Revenue derived from the use of collateral, as opposed to the disposition or diminution of collateral, are not "proceeds."   In re Las Vegas Monorail, 429 B.R. at 333-34 (citing the definition of "proceeds" in U.C.C. § 9-

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

5

102(a)(64), and <u>CLC Equip. Co. v. Brewer (In re Value-Added Commc'n, Inc.)</u>, 139 F.3d 543, 546 (5th Cir. 1998)).  For example, in the <u>Las Vegas Monorail</u> case, the Court rejected an interpretation that a security interest in all of a debtor's "contract rights" rendered all money derived from the Debtor's operations as "proceeds" under the applicable indenture at issue.  429 B.R. at 333.

16.    The definition of "proceeds" in NRS § 104.9102 is as follows:

(1)  Whatever is acquired upon the sale, lease, license, exchange or other disposition of collateral;

(2)  Whatever is collected on, or distributed on account of, collateral;

(3)  Rights arising out of collateral;

(4)  To the extent of the value of collateral, claims arising out of the loss, nonconformity, or interference with the use of, defects or infringement of rights in, or damage to, the collateral; and

(5)  To the extent of the value of collateral and to the extent payable to the debtor or the secured party, insurance payable by reason of the loss or nonconformity of, defects or infringement of rights in, or damage to, the collateral.

NRS § 104.9102(1)(kkk).

17.    Finally, although section 552(b)(1) provides that pre-petition security interests may extend to revenues generate post-petition, it allows the Court, and "based on the equities of the case," to order otherwise.  <u>See</u> 11 U.S.C. § 552(b)(1).  As stated by one Court:

Even if there is a valid security interest in post-petition acquired property constituting the proceeds, products, offspring, or profits of pre-petition collateral, § 552(b)(1) still allows a court to trump a pre-petition lien to this post-petition lien to this post-petition acquired property after notice and a hearing and based on the equities of the case.  Depending on the equities of the case, profit or loss of the property may be given to the estate or to the secured party, or apportioned between them.  The equities of the case doctrine is intended to ensure that secured creditors do not receive a windfall benefit when a trustee uses assets of the estate, for example, to finish uncompleted inventory, and it is also used to adjust recovery by a secured credit in situations where there is an improvement or decline in the post-petition collateral, especially in situations where the change in value is brought about by a party in

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

6

the bankruptcy.

In re Barbara K. Enterps., Inc., No. 08-11474, 2008 WL 24396549, at *11 (Bankr. S.D.N.Y. 2008).

18.    The applicable legislative history accompanying section 552(b) of the Bankruptcy Code demonstrate that this equitable exception applies where an expenditure of estate funds preserves or increases the value of the collateral subject to the security interest in question.  See H. Rep. No. 595, 95th Cong., 1st Sess. 376-77 (1977); 140 Cong. Rec. H10,752-01 (Oct. 4, 1994).  The applicable caselaw applying the "equities of the case" exception also supports the foregoing.  See J. Catton Farms., Inc. v. First Nat'l Bank of Chicago, 779 F.2d 1242, 1246 (7th Cir. 1985); Wolters Village, Ltd., v. Village Props., Ltd (In re Village Props., Ltd.), 723 F.2d 441, 444 (5th Cir. 1984); In re Carbone Cos., 395 B.R. 631, 636-37 (Bankr. N.D. Ohio 2008); In re Gunnison Ctr. Apartments, LP, 320 B.R. 391, 397-99 (Bankr. D. Colo. 2005) (finding that a secured creditor was adequately protected where the cash collateral was utilized to "operate the property in good fashion, pay the expenses of operation and the costs of maintenance to preserve and protect the property, and account for the monies received and the expenses paid"); In re Franklin Pembroke Venture II, 105 B.R. 276, 278 (Bankr. E.D. Pa. 1989); McCombs Props. VI, Ltd. v. First Tex. Sav. Ass'n (In re McCombs Props. VI, Ltd.), 88 B.R. 261 (Bankr. C.D. Cal. 1988); Hartsgan v. Pine Lake Village Apt. Co. (In re Pine Lake Village Apt. Co.), 16 B.R. 750 (Bankr. S.D.N.Y. 1982) (holding that despite the absence of a creditor's consent to the debtor's use of post-petition cash collateral, the debtor was authorized to use cash collateral to maintain its apartment property, and that this would ensure that the creditor was adequately protected).

**B.    Application.**

19.    In the case at hand, in the emergency, interim period consisting of the Petition Date of February 1, 2023 through February 24, 2023 -- the Debtor can survive on cash existing in its Bank Accounts at Wells Fargo as of the Petition Date.  With respect to such cash in the Debtor's Wells Fargo general operating account as of the Petition Date, the Bank Group does not have a deposit account control agreement with the Debtor to provide it with control over any of the Debtor's Bank Accounts; rather, the proceeds received from the Bank Group Collateral are

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

deposited into the Debtor's general operating account at Wells Fargo, and thus are not segregated from other corporate funds. Additionally, the funds in the Debtor's general operating account at Wells Fargo as of the Petition Date were also not in the possession, custody or control of the Bank Group because Wells Fargo is not a member of the Bank Group. Accordingly, the Bank Group is <u>not</u> perfected in the Debtor's cash on hand in its general operating account as of the Petition Date, and thus the Debtor does not need the Bank Group's consent or Court approval to use such funds, but still files this Motion out of an abundance of caution, and also to provide its Budget for proposed use.

20.    The Debtor is proposing only this limited Budget through February 24, 2023, and not a longer term like a typical 13-week budget, because its professionals were only very recently retained within a matter of days prior to the Petition Date, and they need more time to prepare and analyze a longer-term budget. The Debtor has proposed to send this draft longer term budget to the Bank Group by mid-next week so the parties can have a more intelligent discussion about it after the professionals have been more fully informed about the Debtor's situation, and also because the Debtor will need access to cash collateral after February, and indeed hopes that it will be able to negotiate a cash collateral stipulation with the Bank Group, and other potential secured creditors and/or parties requesting adequate protection, in the remainder of the month of February.

21.    The Debtor's Budget was carefully tailored and stripped down to only what is absolutely necessary to avoid immediately and irreparable harm pending a final hearing. The Debtor is only seeking to use cash collateral to preserve, maintain and operate its business in the ordinary course and on an emergency basis until a Final Hearing. Each expense included in the Budget is a necessary and appropriate to the operation of the business. The Debtor's Budget projects that, through February 24, 2023 only, there will be a significant cash build for that period, starting from approximately $2.3 million as of the Petition Date, and rising to $4.6 million at the close of the month. This Budget includes no payments to any of the Debtor's foreign affiliates and also does not include certain other costs that will certainly be needed to be paid in March 2023 and onward, and thus the Debtor does not expect this position to improve

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

after February.   Regardless, at least for the emergency, interim period, all alleged secured creditors are adequately protected given this increase in the Debtor's cash position.

22.   The Debtor proposes to make one-time adequate protection payments to the Bank Group in the amount of $112,603, and to PDS in the amount of $5,674, for a total of $118,674 (collectively, the "Adequate Protection Payments"), which is approximately the interest that accrued on those debts at the contractual non-default basis, within five (5) business days of the entry of an order approving this Motion on an emergency, interim basis.

23.   Accordingly, the Debtor should be granted authority to use (alleged) cash collateral consistent with the Budget and the other terms and conditions as set forth herein, as such use to maintain the business, which provides any secured creditors, including the Bank Group and PDS, with adequate protection, to the extent they have interests entitled to protection.[1]

24.   Finally, the Debtor's continued use of (alleged) cash collateral will generate additional revenue, which can be used to maintain its business, and thus based on the equities of the case, the Debtor should be granted authorization to use cash collateral in accordance with the Budget, and subject to making the Adequate Protection Payments to the Bank Group and PDS.

**C.    The Need for Immediate Relief Pending a Final Hearing.**

25.   Pursuant to Bankruptcy Rule 4001(b), a final hearing on a motion to use cash collateral may not be commenced earlier than fifteen (15) days after service of such motion.  The Court, however, is authorized to conduct an expedited hearing prior to the expiration of such 15-day period and to authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.  Accordingly, the Debtor requests that the Court (i) schedule the Interim Hearing and a Final Hearing to consider approval of Debtor's use of cash collateral and (ii) authorize the Debtor, pursuant to the terms of the Interim Order to use cash collateral in accordance with the Budget pending the Final Hearing.

26.   If the Debtor is unable to obtain the immediate use of cash collateral and is denied

---

[1] Notably, the Budget already includes the proposed Adequate Protection Payments to each.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

the ability to use the income generated from the business pending the Final Hearing, it will be unable to maintain and operate its business and the Debtor will be forced to cease business operations with a resulting immediate and irreparable harm to the value of its business, and ultimately to the estate and its creditors.

27.     The Ninth Circuit has recognized that immediate interim relief may be crucial to the success of a business reorganization:

> We realize that in certain circumstances, the entire reorganization effort may be thwarted if emergency leave is withheld and that reorganization under the Bankruptcy Code is perilous process, seldom more so that at the outset of the proceeding when the debtor is often without sufficient cash flow to fund a central business operation.  It is for this reason that Congress specified that hearings concerning the use of cash collateral shall be scheduled in accordance with the needs of the debtor.

Owens-Corning Fiberglas Corp. v. Center Wholesale, Inc. (In re Center Wholesale, Inc.), 759 F.1d 1440, 1449 n.21 (9th Cir. 1985) (quotations omitted).

28.     Other courts have recognized that four (4) principles for courts to consider with regard to "first day" motions:

> First, the requested relief should be limited to that which is minimally necessary to maintain the existence of the debtor, until such time as the debtor can affect appropriate notice to creditors and parties in interest. In particular, a first day order should avoid substantive rulings that irrevocably determine the rights of parties.

> Second, first day orders must maintain a level of clarity and simplicity sufficient to allow reasonable confidence that an order will effect no unanticipated or untoward consequences.

> Third, first day orders are not a device to change the procedural and substantive rights that the Bankruptcy Code and Rules have established. In particular, first day orders should provide no substitute for the procedural and substantive protections of the plan confirmation process.

> Fourth, no first day order should violate or disregard the substantive rights of parties, in ways not expressly authorized by the Bankruptcy Code.

In re The Colad Group, Inc., 324 B.R. 208, 213-14 (Bankr. W.D.N.Y. 2005).

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

29.     In the case at hand, the Debtor's immediate need to access cash collateral fits squarely within the Ninth Circuit's <u>Center Wholesale, Inc.</u> framework, and does not otherwise run afoul of the four (4) principles in <u>The Colad Group, Inc.</u>, and thus should be approved.

**D.      Waiver of the Stay on the Effectiveness of the Interim Order is Warranted.**

30.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." In view of the urgency of the relief requested herein and the risk to the Debtor's business if it cannot operate, a fourteen-day stay of the relief sought herein is impractical. Accordingly, the Debtor requests that this Court waive the stay under Bankruptcy Rule 6004(h) and provide in the order granting the relief sought herein that such order shall be effective immediately.

## VI. Reservation of Rights

31.     Nothing contained herein is intended or shall be construed as: (i) an admission as to the validity of any claim against the Debtor; (ii) a waiver of the Debtor's or any party in interest's rights to dispute the validity, priority or extent of any lien or claim; or (iii) an approval or assumption of any agreement or lease under section 365 of the Bankruptcy Code. Likewise, if this Court grants the relief sought herein, any payment authorized pursuant to the Court's order is not intended and should not be construed as an admission to the validity, priority or extent of any lien or claim, or a waiver of Debtor's rights to dispute such lien or claim subsequently.

## VII. Conclusion

WHEREFORE, the Debtor requests that the Court enter the Interim Order thereby:  (1) authorizing and approving the Debtor's emergency, interim use of alleged cash collateral, subject to the terms and conditions herein, through and including the date of a Final Hearing, and pursuant to the Budget, subject to a 15% variance per month per line item, and subject further to the Debtor making the Adequate Protection Payments to the Bank Group and PDS within that time period; (2) schedule a Final Hearing on use of cash collateral no sooner than fifteen (15) days after the Interim Hearing to consider final approval of the Motion. The Debtor also requests such other and further relief as is just and proper.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Dated:  February 6, 2023.

By:  /s/ Matthew C. Zirzow
LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
850 E. Bonneville Ave.
Las Vegas, Nevada 89101

Proposed Attorneys for Debtor

# EXHIBIT 1

# EXHIBIT 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Proposed Attorneys for Debtor

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No. 23-10356-abl<br>Chapter 11 |
| AZURE GAMING AMERICA, INC., | |
| Debtor. | Interim Hearing: _____, 2023 at 9:30 a.m.<br>Final Hearing: _____, 2023 at 9:30 a.m. |

**INTERIM ORDER GRANTING DEBTOR'S EMERGENCY MOTION**
**PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, AND 506, AND**
**FED. R. BANKR. P. 4001(b): (A)(I) AUTHORIZING THE USE OF CASH,**
**INCLUDING ALLEGED CASH COLLATERAL, AND (II) GRANTING**
**ADEQUATE PROTECTION, AND (B) SCHEDULING A FINAL HEARING**

Aruze Gaming America, Inc., a Nevada corporation, as debtor and debtor in possession (the "Debtor"), having filed its *Emergency Motion Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 506, and Fed. R. Bankr. P. 4001(b) for Entry of Interim and Final Orders (A)(I) Authorizing the Use of Cash, Including Cash Collateral, and (II) Granting Adequate Protection, and (B) Scheduling a Final Hearing* (the "Motion") [ECF No. __]; the Court having reviewed and

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

considered the Motion and any documents and evidence submitted in support thereof or in opposition thereto; the Court having held an emergency interim hearing on the matter and having heard and considered the arguments of counsel;[1] the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. § 1334; notice of the Interim Hearing having been appropriate and sufficient under the circumstances; the Court having found on a preliminary basis that the emergency, interim relief requested by the Motion is necessary and in the best interests of the Debtor, its estate, and its creditors and necessary to avoid immediate and irreparable harm pending the Final Hearing (as hereinafter defined); the Court having placed its preliminary findings of fact and conclusions of law on the record at the hearing, which are incorporated herein pursuant to Fed. R. Civ. P. 52, made applicable pursuant to Fed. R. Bankr. P. 7052 and 9014; and good and sufficient cause appearing therefore;

**IT IS HEREBY ORDERED:**

1.      The Debtor's Motion is GRANTED on an emergency, interim basis pending a final hearing, which final hearing shall be held on __, 2023 at _____ (the "Final Hearing").

2.      Subject to the terms and conditions of this Order, the Debtor may use any cash, including alleged cash collateral, from the Petition Date through and including the date of the Final Hearing in accordance with the Budget as long as the percentage of deviation for each line item does not exceed fifteen percent (15%) for said expenditures.

3.      As and for adequate protection pending the Final Hearing, the Bank Group and PDS shall receive the following:   (a) pursuant to section 364(c)(1) of the Bankruptcy Code, a superpriority claim under section 507(b) of the Bankruptcy Code against the Debtor and its estate; (b) the Adequate Protection Payments to each as specified in the Budget and the Motion; and (c) pursuant to section 361(2) of the Bankruptcy Code, valid and perfected replacement security interests in and liens upon the Debtor's assets and property, and proceeds thereof, but in all events, only to the extent of:   (a) any post-petition decrease in value of its properly perfected security interests resulting from the use of cash collateral, and (b) to the extent of its pre-petition properly

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meaning as set forth in the Motion.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

perfected security interest in and to any of Debtor's property.

4.    The Debtor is prohibited from using any cash collateral or alleged Cash Collateral except as in the ordinary course of business and pursuant to the Budget as limited herein, and the Debtor is further prohibited from granting any mortgages, deeds of trust, security interests or lien senior or equal to the existing pre-petition security interests.

5.    This Order is without prejudice to any party challenging any matters at the Final Hearing, and such rights and arguments are reserved. No provision contained herein is intended to or should be construed as a determination as to the validity, priority or enforceability of any pre-petition lien or claim against the Debtor or any property of its bankruptcy estate, the value of any of Debtor's property, or a waiver of the Debtor's rights to dispute any such lien or claim.

6.    The Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the terms or implementation of this Order.

**IT IS SO ORDERED.**


PREPARED AND SUBMITTED BY:

By: _____
LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
850 E. Bonneville Ave.
Las Vegas, Nevada  89101

Proposed Attorneys for Debtor


. . .

. . .

. . .

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

### LR 9021 CERTIFICATION

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐ The court has waived the requirement set forth in LR 9021(b)(1).

☐ No party appeared at the hearing or filed an objection to the motion.

☒ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

_____ (Office of U.S. Trustee):

_____ (_____):

☐ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

# # #

# EXHIBIT 2

# EXHIBIT 2

**Aruze Gaming America, Inc.**
Cash Flow Forecast
(Unit : US $)

| | Week Ending | 2/3/2023 | 2/10/2023 | 2/17/2023 | 2/24/2023 |
|---|---|---|---|---|---|
| | | Forecast | Forecast | Forecast | Forecast |
| Cash Balance at Beginning of Week | | 2,370,963 | 2,861,074 | 3,838,529 | 4,720,316 |
| Proceeds from machine sales | | 259,469 | 778,406 | 518,937 | 623,934 |
| Collections on restricted cash (factoring) | | - | - | 16,000 | 24,737 |
| Proceeds from parts sales | | 18,283 | 54,849 | 36,566 | 45,707 |
| Proceeds from other sales | | 8,026 | 24,077 | 16,051 | 20,064 |
| Proceeds from lease | | 180,631 | 541,893 | 361,262 | 451,578 |
| Proceeds from lease participation | | - | - | - | - |
| Proceeds from service fee income | | 4,906 | 14,719 | 9,813 | 12,266 |
| Proceeds from iGaming | | 18,796 | 56,387 | 37,592 | 46,989 |
| Other-Customer Deposits | | - | - | - | - |
| Other-Alliance Licensing Proceeds | | - | - | - | - |
| Proceeds from Royalties | | | | 5,422 | |
| Factoring/Liquidation of receivables | | | | | |
| Total Receipts | | 490,110 | 1,470,331 | 1,001,643 | 1,225,276 |
| Purchase of inventories - 3rd party | | | | | 150,000 |
| Total personnel expenditures | | - | 452,198 | - | 602,177 |
| Salaries & Wages (include OT) | | | 358,887 | | 358,887 |
| Commissions | | | | | 149,979 |
| Sheltering Costs | | | | | |
| Payroll Taxes | | | 35,889 | | 35,889 |
| Benefits | | | 57,422 | | 57,422 |
| Payments of freight costs | | | | | 150,000 |
| Payments of taxes and dues | | - | - | - | - |
| Payments of income taxes | | - | - | - | - |
| Payments of sales taxes | | | | | 162,655 |
| Payments of unusual expense | | - | - | - | - |
| Total other expenses, net of other expenses/line items | | - | 37,626 | 75,000 | 80,200 |
| Gaming Evaluation (Product Compliance) | | | | 75,000 | |
| Gaming Licenses (Regulatory Compliance) | | | | | 67,000 |
| Professional Fees, Legal | | | | | - |
| Professional Fees, Accounting and Tax | | | | | |
| Professional Fees, Outside Consulting | | | | | |
| Travel & Ent., Domestic | | | | | |
| Travel & Ent., International | | | | | |
| Advertising | | | | | |
| Marketing/Events | | | | | |
| Gaming Shows Expenses | | | | | |
| Communication | | | | | |
| Utilities & Security | | | | | |
| Maintenance - Build & Grounds | | | | | |
| Rental, Buildings | | | | | |
| Rental, Small Equipment | | | | | |
| Rental, Other | | | | | |
| Business Licenses & Taxes | | | | | |
| Postage, Courier & Non-Production Freight | | | | | |
| Office Supplies | | - | - | - | - |
| Association Dues & Subscriptions, IT | | | | | 13,200 |
| Insurance (Workers Comp) | | | 37,626 | | |
| Total Operating Disbursements | | - | 489,824 | 75,000 | 1,145,032 |
| Cash Flow from Operating Activities | | 490,110 | 980,507 | 926,643 | 80,244 |

*(Left margin vertical label: Operating Activities)*

| Aruze Gaming America, Inc. | | | | | |
|---|---|---|---|---|---|
| Cash Flow Forecast | Week Ending | 2/3/2023 | 2/10/2023 | 2/17/2023 | 2/24/2023 |
| (Unit : US $) | | Forecast | Forecast | Forecast | Forecast |
| **Intercompany Accounts** | Proceeds from AGHK | | | | |
| | Proceeds from other subsidiaries (-120 days) | - | - | - | - |
| | AGA SA | - | - | - | - |
| | AGA AU | - | - | - | - |
| | AGA Macau | - | - | - | - |
| | AGA EU | - | - | - | - |
| | Adjustment of intercompany AR/AP | | | | |
| | Other | | | | |
| | Subtotal | - | - | - | - |
| | Payment to AGHK | - | - | - | - |
| | Payment to APMI (+ 30 days) - includes APMI & ROH | - | - | - | - |
| | Payment to AGT | - | - | - | - |
| | Other- Chairman | - | - | - | - |
| | Subtotal | - | - | - | - |
| | Intercompany account balances | - | - | - | - |
| **Interest and Financing** | Sales of tangible/intangible assets | | | | |
| | Sales of financial assets (Alliance revenue) | | | | |
| | Other- State Tax Refund | | | | |
| | Subtotal | - | - | - | - |
| | Interest payments | | 791 | 3,476 | 118,277 |
| | Payment to NSG for licensed RTWC | | | | |
| | Purchase of financial assets | | | | |
| | Other (costs of factoring) | | | | |
| | Subtotal | - | 791 | 3,476 | 118,277 |
| | Investments and other | - | (791) | (3,476) | (118,277) |
| **Principal Payments** | Proceeds from intercompany loans | | | | |
| | Proceeds from ST debt | | | | |
| | Proceeds from LT debt | | | | |
| | Subtotal | - | - | - | - |
| | Repayments of intercompany loans | | | | |
| | Repayments of ST debt | | | | |
| | Repayments of LT debt (Vehicles and factored AR) | | 2,261 | 41,380 | 35,682 |
| | Subtotal | - | 2,261 | 41,380 | 35,682 |
| | Financing | - | (2,261) | (41,380) | (35,682) |
| | Total Net Cash Flow | 490,110 | 977,455 | 881,787 | (73,715) |
| | Cash Balance at End of Week | 2,861,074 | 3,838,529 | 4,720,316 | 4,646,601 |