

_____
Honorable August B. Landis
United States Bankruptcy Judge

Entered on Docket
March 23, 2023

LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Proposed Attorneys for Debtor

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>ARUZE GAMING AMERICA, INC.,<br><br>          Debtor. | Case No.: 23-10356-abl<br>Chapter 11<br><br>Second Interim Hearing:<br>February 28, 2023 at 2:30 p.m.<br><br>Final Hearing:<br>March 13, 2023 at 1:30 p.m. |

**SECOND INTERIM ORDER: (I) GRANTING, IN PART, THE DEBTOR'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A)(I) AUTHORIZING THE USE OF ALLEGED CASH COLLATERAL AND (II) GRANTING ADEQUATE PROTECTION, AND (B) SCHEDULING A FINAL HEARING; AND**

**(II) APPROVING SECOND STIPULATION BY AND BETWEEN THE DEBTOR, CERTAIN SECURED CREDITORS, AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS RE: THE DEBTOR'S MOTION FOR INTERIM USE OF CASH COLLATERAL**

Aruze Gaming America, Inc., as debtor in possession (the "Debtor"), having filed its *Emergency Motion For Entry of Interim and Final Orders (A)(I) Authorizing the Use of Alleged Cash Collateral and (II) Granting Adequate Protection, and (B) Scheduling a Final Hearing* [ECF No. 15] (the "Motion"); the Motion having come on for various interim hearings on February 10 and 13, 2023, whereafter the Court entered an Interim Order[1] regarding the use of alleged cash collateral from the commencement of the case on February 1, 2023 (the "Petition Date") though and including February 24, 2023; the Court having held a rescheduled further hearing on February 28, 2023, and with all appearances having been noted on the record of the hearings; the Court having reviewed and considered all pleadings and evidence submitted in support of in opposition to the Motion; certain parties having entered into that *Second Stipulation By and Among the Debtor, Certain Secured Creditors, and the Official Committee of Unsecured Creditors Re: the Debtor's Request for Further Interim Use of Cash Collateral* (the "Second Stipulation"), which is attached hereto as **Exhibit 1**; the Court having placed its findings of fact and conclusions of law on the record at the hearings, which are incorporated herein pursuant to Fed. R. Civ. P. 52, as made applicable pursuant to Fed. R. Bankr. P. 7052 and 9014; the relief requested appearing necessary, on a preliminary basis, to avoid immediate and irreparable harm; and other good and sufficient cause appearing;

**IT IS HEREBY ORDERED:**

1.      The Motion is GRANTED, IN PART, as modified by, and subject fully to, the terms and conditions of the Second Stipulation, which also is APPROVED, and with such approvals being granted only on an emergency interim basis pending a final hearing scheduled for March 13, 2023 at 1:30 p.m. (the "Final Hearing")

2.      With respect to any alleged cash collateral or other funds received by the Debtor from the Petition Date through the date of the Final Hearing that is attributable to any agreements involving the Debtor, on the one hand, and any of PDS Gaming, LLC, PDS Gaming-Nevada, Inc.,

---

[1] "Interim Order" means that *Amended Interim Order: (I) Granting, in Part, the Debtor's Emergency Motion for Entry of Interim and Final Orders (A)(I) Authorizing the Use of Alleged Cash Collateral and (II) Granting Adequate Protection, and (B) Scheduling a Final Hearing; and (II) Approving Stipulation by and Between the Debtor, on the One Hand, and Various Secured Creditors, Individually and on Their Own Respective Behalves With the Debtor, and Not in Concert With Each Other, on the Other Hand, Resolving the Debtor's Motion for Interim Use of Cash Collateral* [ECF No. 66].

PDS Gaming-Mississippi, Inc., PDS Gaming-LA, LLC, NextStep Capital, LLC or NextStep Gaming, LLC, on the other hand, the Debtor (unless such funds have already been paid over pursuant to the terms of the Interim Order or are to be paid over by the terms of this Order) shall segregate and earmark such funds in favor of such parties, and shall not spend such monies, pending further order of the Court at the Final Hearing or otherwise.

3.    Notwithstanding anything in the Second Stipulation to the contrary, this Order is without prejudice to any party challenging any matters at the Final Hearing, and such rights and arguments are reserved.

**IT IS SO ORDERED.**

PREPARED AND SUBMITTED:

By:   /s/ Matthew C. Zirzow
LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
Email:  zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
Email: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel:  (702) 382-1170

Proposed Attorneys for Debtor

. . .

. . .

. . .

### LR 9021 CERTIFICATION

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐    The court has waived the requirement set forth in LR 9021(b)(1).

☐    No party appeared at the hearing or filed an objection to the motion.

☒    I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

Phillip Ashfield/Jim Shea (Counsel First Savings Bank & National Servicing Administration, LLC):  APPROVE

Jennifer Nassiri/Gabrielle Hamm (Counsel to the Official Committee of Unsecured Creditors):  APPROVE

Jeanette McPherson (Counsel to NextStep Gaming & RSPENN):  DISAPPROVE

Ryan Works (Counsel to PDS Gaming, LLC, *et al.*):  DISAPPROVE

Edward M. McDonald, Jr. (Office of U.S. Trustee):   APPROVE

Jeffrey Sylvester (Counsel to Empire Technologies):  DISAPPROVE

Evan Zucker/Rob Charles (Counsel to Gaming Labs Int'l):  APPROVE

☐    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

# # #

# EXHIBIT 1

LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Proposed Attorneys for Debtor

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>ARUZE GAMING AMERICA, INC.,<br><br>Debtor. | Case No.: 23-10356-abl<br>Chapter 11<br><br><u>Second Interim Hearing:</u><br>February 28, 2023 at  2:30 p.m.<br><br><u>Final Hearing:</u><br>March 13, 2023 at 1:30 p.m. |

**SECOND STIPULATION BY AND AMONG THE DEBTOR,
CERTAIN SECURED CREDITORS, AND THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS RE: THE DEBTOR'S REQUEST FOR FURTHER
<u>INTERIM USE OF CASH COLLATERAL</u>**

This stipulation (the "**Second Stipulation**") is stipulated and agreed to by and among Aruze Gaming America, Inc., as debtor in possession (the "**Debtor**"), the Official Committee of Unsecured Creditors of Aruze Gaming America, Inc. (the "**Committee**") appointed in this case, and First Savings Bank ("**FSB**") and National Servicing and Administration, LLC ("**NSA**," and together with FSB, collectively, the "**Secured Creditors**"), to resolve the *Debtor's Emergency Motion for Entry of Interim and Final Orders (A)(I) Authorizing the Use of Alleged Cash Collateral and (II) Granting Adequate Protection, and (B) Scheduling a Final Hearing* [ECF No. 15] (the "**Motion**"), for the period from February 25, 2023 through and including March 10, 2023 (the "**Second Interim Period**"), and the written and oral objections made to the Motion, and to authorize the Debtor's

interim use of the Secured Creditors' respective cash collateral, subject to the following stipulations, findings of fact, and conclusions of law:

**I.        Jurisdiction, Venue, and Statutory Predicates**

1.        The Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") on February 1, 2023 [ECF No. 1] (the "**Petition Date**"), thereby commencing the above-captioned proceeding in the United States Bankruptcy Court for the District of Nevada (the "**Bankruptcy Court**").

2.        On February 17, 2023, the United States Trustee for this jurisdiction (the "**UST**") appointed certain unsecured creditors to serve on Committee.  The Committee recently retained counsel and a financial advisor.

3.        This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  This Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  Venue is proper in this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.        The statutory predicates for the relief requested in the Motion and as agreed to in this Second Stipulation are sections 105, 362, and 363 of the Bankruptcy Code (and the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the local rules of bankruptcy practice of this Court (the "**Local Rules**").

5.        The Court held preliminary hearings on the Motion on February 10, 2023 at 9:30 a.m. and 4:00 p.m., a further interim hearing on February 13, 2023 at 9:30 a.m. (collectivtely, the "**Interim Hearing**"), and set a final hearing on the Motion for February 22, 2023 at 1:30 p.m. (the "**February 22 Hearing**").  Pursuant to stipulation by certain stakeholders in this case, including the Debtor, the Secured Creditors, and counsel for the UST, the February 22 Hearing has been continued to February 28, 2023 at 2:30 p.m. (the "**Second Interim Hearing**").

6.        Adequate and sufficient notice of the Second Interim Hearing and the relief requested in the Motion, as evidenced by the applicable certificates of service filed with the Court and as stated on the record, have been given in accordance with the provisions of sections 102(1) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001(c), and 4001(d), and the Local Rules. Under

the circumstances, no further notice is required.

7.    This Second Stipulation shall be attached as an exhibit to and incorporated by reference into the order granting the Debtor's Motion on a second interim basis (the "**Second Interim Order**"). The Court's entry of the Second Interim Order, including approval of this Second Stipulation without change, is a condition precedent to the effectiveness of this Second Stipulation.

**II.    Prepetition Indebtedness**

8.    The Secured Creditors and the Debtor are parties to several commercial loan transactions (the "**Secured Creditors Loans**"), evidenced by, among other things, loan agreements, promissory notes, and security agreements (collectively, the "**Secured Creditors Loan Agreements**"). As of the Petition Date, the Secured Creditors and the Debtor estimate the balance owed by the Debtor under the Secured Creditor Loans to the Secured Creditors is not less than $20,070,000.00, in the aggregate, plus interest, default interest, late fees, costs, and attorneys' fees (the "**Secured Creditors Outstanding Balance**").

9.    Under the Secured Creditors Loans, the Debtor granted the Secured Creditors a security interest (the "**Secured Creditors Pre-Petition Liens**") in certain of the Debtor's assets (the "**Secured Creditors Collateral**"), as listed in the Secured Creditors Loans and on Exhibit A to the FSB Financing Statements (defined below) and on Exhibit A to the NSA Financing Statements (defined below), respectfully.

10.    On or about November 2, 2020, FSB filed a UCC-1 Financing Statement with the Secretary of State for the State of Nevada, filing number 2020135111-6, as from time to time amended, restated, and supplemented (collectively the "**FSB Financing Statements**").[1]

11.    On or about January 26, 2021, NSA filed a UCC-1 Financing Statement with the Secretary of State for the State of Nevada, filing number, 2021169797-0, as from time to time amended, restated, and supplemented (the "**NSA Financing Statements**").[2]

12.    On January 26, 2023, the Secured Creditors sent the Debtor a Notice of Default under

---

[1] FSB also recorded its interest in the Collateral with the Secretary of State for the District of Columbia.

[2] NSA also recorded its interest in the Collateral with the Secretary of State for the District of Columbia.

the Loans.

13.     On January 31, 2023, the Secured Creditors sent the Debtor a Notice of Acceleration of Debt, which accelerated, and made immediately due and payable, the Secured Creditors Outstanding Balance.

14.     Under one or more of the foregoing, the Debtor granted the applicable Secured Creditors a security interest (the "**Secured Creditors Pre-Petition Liens**") in certain of the Debtor's assets (the "**Secured Creditors Collateral**"), as more particularly listed therein and in any applicable financing statements filed with respect thereto.

15.     The Secured Creditors Pre-Petition Liens are hereinafter collectively referred to as the "**Pre-Petition Liens**" but in all cases as used herein, respective only to the applicable Secured Creditor specifically, and not them collectively.

16.     The Secured Creditors Collateral are hereinafter collectively referred to as the "**Collateral**" but in all cases as used herein, respective only to the applicable Secured Creditor specifically, and not them collectively.

17.     The Committee having only been recently formed has not had an opportunity to fully investigate the nature, extent, validity, and priority of respective claims, liens, and interests asserted against the Debtor's estate by the Secured Creditors and other interested parties.

**III.    Stipulations**

18.     <u>The Secured Creditors Respective Loans Remain in Full Force and Effect</u>.  The Debtor, on the one hand, and the Secured Creditors, on the other hand, but each only with the Debtor, acknowledge and agree that as of the Petition Date:

(a)     the Secured Creditors' respective Loans and other agreements with the Debtor are valid, binding, and enforceable and were granted to, or for the benefit of, the applicable Secured Creditors for fair consideration and reasonably equivalent value;

(b)     the debt created, by and associated with the Secured Creditors' respective Loans and related agreements, respectively, constitute legal, valid, binding, and non-avoidable obligations of the Debtor, enforceable in accordance with the terms of the applicable Loan(s);

(c)     The Committee reserves all rights to challenge the stipulations set forth in ¶¶ 18 (a) and (b) above.

19.     Cash Collateral. Any amounts generated by the collection of accounts receivable (to the extent those accounts are Collateral), amounts generated by disposition of the Collateral, and proceeds of any of the foregoing constitutes "cash collateral" subject to the Pre-Petition Liens of the respective Secured Creditors, as applicable, within the meaning of section 363(a) of the Bankruptcy Code (the "**Cash Collateral**"), and as such, the Secured Creditors, as applicable, are entitled, pursuant to sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of their interest as a condition to the Debtor's use of Cash Collateral.

20.     Replacement Lien as Adequate Protection.  In accordance with sections 361 and 363 of the Bankruptcy Code, as adequate protection to the respective Secured Creditors for the Debtor's use of their respective Cash Collateral during the Interim Period as set forth herein and in the Budget (as hereinafter defined), the Debtor grants the Secured Creditors a post-petition security interest and replacement lien to the same extent and priority as their respective Pre-Petition Liens in their respective Collateral (including Cash Collateral) as is more fully described in their applicable respective loan documents, whether such assets were in existence prior to the commencement of this Bankruptcy Case or have been or may be acquired by the Debtor after the commencement of the Bankruptcy Case, and wherever such assets may be located (the "**Replacement Liens**"). The post-petition security interest and Replacement Liens granted in favor of the respective Secured Creditors includes all proceeds, products, replacements, substitutions, additions and accessions relating to their respective Collateral. Such replacement liens and security interests shall be deemed valid, automatically perfected, continuing, unavoidable and enforceable, not subject to subordination, impairment or avoidance, without any additional action by the respective Secured Creditors, who are entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception shall not apply.  The entry of the Second Interim Order approving this Second Stipulation shall be sufficient and conclusive evidence of the validity, perfection, and first priority of the Replacement Liens without the necessity of filing or recording any financing statement or

other instrument or document (including, without limitation any mortgages or leasehold mortgages), or the taking of any other action whatsoever which may otherwise be required under the law of any jurisdiction to validate or perfect the Replacement Liens or to entitle the Secured Creditors to the protections and first priorities granted herein.  Notwithstanding the foregoing, the Secured Creditors may, in their respective sole discretion, file such financing statements, notices of liens, and other similar documents, and are hereby granted relief from the automatic stay of Section 362 of the Bankruptcy Code in order to do so, and all such filings, notices, and other documents shall be deemed to have been filed or recorded at the time and on the Petition Date. The Debtor shall execute and deliver to the respective Secured Creditors all such financing statements, notices, and other documents as the Secured Creditors, individually, may reasonably request to evidence, confirm, validate or perfect, or to ensure the first priority of, the Replacement Liens granted pursuant hereto. The Secured Creditors, individually, may file a copy of the Second Interim Order approving this Second Stipulation (which Second Stipulation shall be attached thereto as an exhibit) as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtor has real or personal property, and in such event, the subject filing or recording officer shall file or record such copy of the Second Interim Order approving this Second Stipulation (including the Second Stipulation to be attached thereto). No lien of any Secured Creditor, including the Replacement Liens, shall extend or attach to any proceeds of (a) any claims or causes of action (i) under chapter 5 of the Bankruptcy Code, or (ii) to equitably subordinate the claims of the Secured Creditors, (iii) invalidate the amount, validity, enforceability, priority or extent of the indebtedness under the Secured Creditors' loan facilities, and/or (iv) related to any lien or security interest in any of the Secured Creditors' collateral, or (b) any other similar unencumbered assets, including, but not limited to, commercial tort claims, causes of action against directors and officers, related insurance policies and the proceeds of those policies.

21.    Section 507(b) Claim. As further adequate protection, the Secured Creditors are hereby each granted pursuant to section 507(b) of the Bankruptcy Code a superpriority claim in the amount of the Debtor's cumulative use of their respective Cash Collateral pursuant to any order of

the Court to the extent the aforementioned respective Replacement Liens are insufficient to provide

adequate protection against the diminution, if any, in the value of the Secured Creditors' respective

interests in any of their respective Collateral resulting from the Debtor's use of Cash Collateral (the

"**Section 507(b) Claim**"). The priority of the Section 507(b) Claim shall be senior in priority of

payment over all administrative expenses of the kinds specified or ordered pursuant to any provision

of the Bankruptcy Code.

22.    <u>Control Disclaimer</u>.  The Secured Creditors did not control the Debtor, its properties,

or its operations or have authority to determine the manner in which the Debtor's operations were

conducted and was not a control person, insider of the Debtor, a "responsible person" or "owner or

operator" (as such terms or similar terms are used in the Comprehensive Environmental Response,

Compensation, and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, the Resource Conservation and

Recovery Act, 42 U.S.C. §§ 6901 *et seq.,* as either may be amended from time to time, or any similar

federal, state, or local law, statute or ordinance), by virtue of any of the actions taken with respect

to, in connection with, related to or arising from the Loans, associated debt, or the respective Pre-

Petition Liens.

23.    <u>Need for Cash Collateral</u>.  The Debtor has an immediate and critical need to use the

Cash Collateral to avoid immediate and irreparable harm to the estate pending the Final Hearing on

Cash Collateral, and to pay, on an interim basis, certain operational expenses in accordance with the

Budget (as hereinafter defined), in order to permit, among other things, the orderly continuation of

the operation of its business, all toward the goal of a successful reorganization or sale.

24.    <u>Use of Cash Collateral</u>.  Based on the Motion, the terms set forth herein, and the

record before the Court, the Debtor may use Cash Collateral as set forth in the budget attached to

this Second Stipulation as **<u>Exhibit A</u>** (the "**Budget**") for the Second Interim Period.  The Debtor has

established a general operating, debtor in possession account, as described in the Debtor's

*Emergency Motion For Entry Of An Order Authorizing: (I) Continued Use Of Existing Bank*

*Accounts, And Honoring Of Certain Prepetition Obligations Related Thereto; And (II) Continued*

*Use Of Business Forms, And Granting Related Relief* (the "**Cash Management Motion**"), and the

Debtor is expressly prohibited from comingling Cash Collateral with any personal financial accounts of the managers, members, or owners of the Debtor.

25.     <u>Good Faith</u>. The Debtor's use of Cash Collateral has been negotiated in good faith and at arms' length between the Debtor and the Secured Creditors.  The Secured Creditors' consent to the Debtor's use of Cash Collateral shall be deemed to have been made in "good faith."

26.     <u>Conditions for Use of Cash Collateral</u>.   The Debtor's interim use of the Cash Collateral, which expires upon the earlier of March 10, 2023, or the entry of an order for final use of Cash Collateral, or the occurrence of an Event of Default as set forth below, is conditioned upon:

(a)     the Debtor operating within the Budget. The Budget includes minimum adequate protection payments to the Secured Creditors in the amount of $273,645.00 by no later than March 3, 2023, subject to entry of the Second Interim Order.  This amount will be applied to the outstanding balance as provided under each Secured Creditors' respective Loans with the Debtor.  No other adequate protection payments shall be made during the Second Interim Period;

(b)     the Debtor shall not make any payments to creditors, non-debtor affiliates, or any other party except for payments specifically described and provided for in the Budget. For the avoidance of doubt, the Debtor shall not make any payments to any non-Debtor affiliate on account of the line item identifed on the Budget as "Manufacturing - Cost of Goods Sold" during the Second Interim Period;

(c)     the Debtor not selling, transferring, leasing, encumbering or otherwise disposing of any portion of the Collateral other than in the ordinary course of business without the consent of the Secured Creditors;

(d)     the Debtor's continued compliance with any other Orders of this Court;

(e)     the Debtor shall provide the Secured Creditors and the Committee with a weekly cash flow statement, prepared in good faith by the Debtor, in a form reasonable acceptable to the Secured Creditors and the Committee, based upon assumptions and estimates that the Debtor believes to be reasonable, and providing the weekly cash flow statement to the

Secured Creditors and the Committee by no later than 5:00 p.m. prevailing Pacific Time each Wednesday for the prior week via electronic mail as directed by the Secured Creditors and the Committee or their respective counsel;

(f)    the Debtor permitting the Secured Creditors and the Committee and their respective consultants, counsel, and agents, upon reasonable notice up to two times per month, to: (i) examine the respective corporate, financial and operating records, and, at the Debtor's sole reasonable expense, make copies thereof; (ii) inspect the assets, properties, Collateral, operations and affairs of the Debtor; (iii) visit any or all of the offices of the Debtor and its estate to discuss such matters with their officers, independent auditors, accountants or consultants (and the Debtor hereby authorizes such independent auditors, accountants and consultant to discuss such matters with the Secured Creditors and the Committee and their respective consultants, counsel, and agents); provided, however, that the Debtor reserves its right to claim that any such documents are protected under attorney client privilege to the extent permitted under applicable law;

(g)    the Debtor providing the Secured Creditors and the Committee with monthly financial statement reports no later than the 10th day of the following month;

(h)    the Debtor providing the Secured Creditors and the Committee with a weekly sales and leasing report, in a form reasonably acceptable to the Secured Creditors and the Committee, and providing the weekly sales and lease order report to the Secured Creditors and the Committee by no later than 5:00 p.m. prevailing Pacific Time each Wednesday for the prior week via electronic mail as directed by the Secured Creditors and the Committee or their respective counsel; and

(i)    the Debtor shall participate in a weekly telephone conference with the Secured Creditors and the Committee during the Interim Period, which shall be scheduled at a mutually convenient time, to discuss business operations, compliance with the Budget, significant expenses, and developments in the Chapter 11 case, including with respect to any material contracts, any material litigation, and any material operational or regulatory items.

(j)     the Debtor shall separately account for each of the Secured Creditors' respective interests in and to Cash Collateral on its books and records, and to the extent any Cash Collateral is received post-petition, to the extent such Cash Collateral is commingled with any other funds that may or may not be encumbered, that shall not defeat the validity of the applicable Secured Creditors' security interest in and to such funds.

27.     <u>Event of Default.</u> The Debtor shall not seek, and it shall constitute an "Event of Default" and terminate the right of the Debtor to use Cash Collateral if the Debtor, without the prior written consent of the Secured Creditors seeks, proposes or supports (whether by way of motion or other pleadings filed with the Court or any other writing executed the Debtor or its managers or members), or if there is entered or confirmed (in each case, as applicable), or if there occurs:

(a)     a failure of the Debtor to: (i) observe or perform any of the material terms or provisions contained in this Second Stipulation or the order approving it, including compliance with the Budget; or (ii) comply with any covenant or agreement in this Second Stipulation or any order approving it in any material respect;

(b)     the entry of an order converting to a case under chapter 7 of the Bankruptcy Code or dismissing the Chapter 11 case;

(c)     the entry of an order granting any other claim a lien equal or superior to the claims and liens granted to the Secured Creditors;

(d)     the entry of an order staying, reversing, vacating or otherwise modifying the terms of the Second Interim Order without the Secured Creditors' prior written consent;

(e)     any post-petition material representation or material warranty by the Debtor or its managers or members that is incorrect or misleading in any material respect when made;

(f)     the general cessation of the day-to-day operations of the Debtor;

(g)     the entry of any order granting any relief from the automatic stay so as to allow a third party to proceed against any material asset or assets of the estate.

The Debtor shall, from and after the date of this Second Stipulation: (a) provide notice to the

Secured Creditors and the Committee as soon as practicable of the occurrence of any Event of Default (as defined above) or any event known to the Debtor or its counsel which, with the passage of time or giving of notice, or both, would constitute an Event of Default; and (b) oppose any appeal or other challenge to the Second Interim Order, including any action taken to amend, modify, or vacate the Second Interim Order without the Secured Creditors' respective written consent.

28.    <u>Event of Default Remedies</u>.  Upon the occurrence and continuation of an Event of Default for at least three (3) business days, and after written notice thereof, which may be transmitted via email to the Debtor's bankruptcy counsel; the Secured Creditors, individually, may exercise their rights and remedies and seek relief, including under section 362 of the Bankruptcy Code, from the Bankruptcy Court to take the following actions:

(a)    enjoin and prohibit the Debtor from using their respective Cash Collateral;

(b)    enforce rights against all or part of any of their respective Collateral as set forth in the Loans; and/or

(c)    subject to the provisions this Second Stipulation and the Second Interim Order approving it, take any other action or exercise any other right or remedy of the respective Secured Creditors under their respective Loans or other agreements, the Second Interim Order, or by operation of law.

Upon the Debtor's receipt of a default notice, the Debtor shall immediately cease making any disbursements pursuant to the Budget or otherwise, subject to further order of the Bankruptcy Court after notice and a hearing.

29.    <u>Ancillary Cases.</u>  The terms and provisions of this Second Stipulation and the Second Interim Order shall continue in this Chapter 11 Case, in any successor case if another is jointly administered with this Chapter 11 Case, and in any superseding chapter 7 cases under the Bankruptcy Code.

30.    <u>Reservation of Rights to Seek Additional Adequate Protection.</u> Nothing contained herein shall be deemed a finding by the Court or an acknowledgement by the respective Secured Creditors that the adequate protection granted herein does in fact adequately protect the respective

Secured Creditors against any diminution in value of their interests in their respective Collateral (including the Cash Collateral) arising on account of the Debtor's use, sale, or lease thereof during the Interim Period or at any time thereafter.

31.    <u>No Shared Collateralization Among Secured Creditors; Interpretation</u>.    Nothing herein is intended or should be construed as creating or perfecting any lien, claim or interest by any one of the Secured Creditors in and to any of the other Secured Creditors' respective Collateral (unless such lien, claim or interest already existed in the others Collateral prior to the Petition Date). All provisions of this Second Stipulation shall at all times be read as only an agreement by and between the Debtor, on the one hand, and each of the respective Secured Creditors, on the other hand, and in no event shall it be read as an agreement by and between any specific Secured Creditors. All references to the collective Secured Creditors shall be read to refer to each of them individually, and with all rights and remedies to each of them individually, and not in concert.

32.    <u>Committee Reservation of Rights</u>.  Nothing in this Second Stipulation or the Second Interim Order shall be deemed to waive and release any rights the Committee may have to make any claim, counterclaim, objection, defense, setoff, recoupment, reduction, disgorgement, avoidance, recharacterization, reclassification, subordination, disallowance, impairment or other challenge pursuant to the Bankruptcy Code or other non-bankruptcy law with respect to the Secured Creditors' loans, claims, collateral including the Cash Collateral, the underlying agreements, or related transactions, or the extent priority or validity of the Secured Creditors' liens.  The Committee reserves all rights to challenge that the Secured Creditors have valid, perfected and enforceable liens against property of this Debtor's estate.

33.    <u>Conflict.</u>  In the event of any inconsistency between the provisions of this Second Stipulation and the Loans or any other order entered by this Court, the provisions of this Second Stipulation shall govern.

34.    <u>Term.</u>  The Second Interim Order shall constitute findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rules 7052 and 9014, and shall take effect and be fully enforceable effective as of the

Petition Date immediately upon entry. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, the Second Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of the Second Interim Order.

35.    <u>Continued Jurisdiction.</u>  The Court shall retain jurisdiction to enforce the provisions of this Second Stipulation and the Second Interim Order approving it, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for the Debtor notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

36.    <u>Modification of the Automatic Stay</u>.  The automatic stay imposed by Section 362(a) of the Bankruptcy Code is hereby modified to the extent necessary to permit the Debtor to grant the Replacement Liens and provide such other relief set forth in the Second Interim Order.

37.    <u>Final Hearing</u>.  Subject to the Court's availability, the parties to this Second Stipulation shall jointly request a final hearing on the Motion to be held not later March 17, 2023, at such date and time that is convenient for the Court.

38.    <u>Service.</u>  The Debtor shall promptly serve copies of this Second Stipulation (which shall constitute adequate notice of the Final Hearing, including, without limitation, notice that the Debtor will seek approval at the Final Hearing of a waiver of rights under sections 506(c) and 552(b) of the Bankruptcy Code) to the parties having been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court.

. . .

. . .

. . .

STIPULATED AND AGREED:

By: ___/s/ Matthew C. Zirzow_____
LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
Email: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
Email: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170

Proposed Attorneys for Debtor


STIPULATED AND AGREED:

By: ___/s/ Phillip J. Ashfield_____
STINSON LLP
Phillip J. Ashfield, Esq., MN Bar No. 0388990
Drew J. Glasnovich, Esq., MN Bar No. 0398366
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 335-1407
Email: phillip.ashfield@stinson.com
drew.glasnovich@stinson.com

-and-

James Patrick Shea, Esq. Nevada Bar No. 405
Bart K. Larsen, Esq. Nevada Bar No. 8538
SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Tel: (702) 471-7432
Email: jshea@shea.law
blarsen@shea.law

Attorneys for Creditors National Servicing &
Administration, LLC and First Savings Bank

STIPULATED AND AGREED:

By: ___/s/ Ori Katz_____
SHEPPARD, MULLIN, RICHTER &
   HAMPTON LLP
ORI KATZ, Cal. Bar No. 209561
   *(pro hac vice admission pending)*
JEANNIE KIM, Cal. Bar No. 270713
   *(pro hac vice admission pending)*
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
E mail        okatz@sheppardmullin.com
              jekim@sheppardmullin.com

JENNIFER L. NASSIRI,
   Cal. Bar No. 209796 (*pro hac vice
   admission pending*)
1901 Avenue of Stars, Suite 1600
Los Angeles, CA 90067
Telephone:    310.228.3700
Facsimile:    310.228.3701
E-mail:       jnassiri@sheppardmullin.com

-and-

SCHWARTZ LAW, PLLC
SAMUEL A. SCHWARTZ, NV Bar No. 10985
601 East Bridger Avenue
Las Vegas, NV 89101
Telephone:    702.385.5544
Facsimile:    702.442.9887
E mail        saschwartz@nvfirm.com

Proposed Attorneys for the Official Committee of
Unsecured Creditors of Aruze Gaming America,
Inc.

# EXHIBIT A

**Ardze Gaming America, Inc.**
**Case No.: 23-10356-abl**
**2 Week Cash Flow Budget**
**From February 25, 2023 through March 10, 2023**

| Actual/Forecast<br>Week Number<br>Week Ending Date | Reference | Forecast<br>1<br>03/03/23 | Forecast<br>2<br>03/10/23 | 02/25/23 -<br>03/10/23 |
|---|---|---|---|---|
| **Cash Receipts** | | | | |
| Accounts receivable collections | 1 | $ 521,435 | $ 540,093 | $ 1,061,528 |
| Recurring revenue | 2 | 571,008 | 536,554 | 1,107,561 |
| Affiliate and subsidiary revenue | 3 | - | - | - |
| Affiliate loan repayments | 4 | - | - | - |
| NSG Alliance licensing proceeds | 5 | - | - | - |
| NSG Alliance profit sharing | 6 | - | - | - |
| Factored AR - Collections | 7 | 151,989 | 45,638 | 197,627 |
| Factored AR - Contra payment to Factor | 8 | (218,648) | (45,638) | (264,286) |
| PDS lease revenue | 9 | 67,134 | 60,102 | 127,236 |
| PDS lease revenue - Contra payment to PDS | 10 | (67,134) | (60,102) | (127,236) |
| PDS sale of unit - Contra payment to PDS | 11 | - | - | - |
| Delta lease revenue | 12 | 5,093 | 5,093 | 10,187 |
| Delta lease revenue - Contra payment to Delta | 13 | (5,093) | (5,093) | (10,187) |
| Delta service fee | 14 | - | - | - |
| Empire lease revenue | 15 | 27,361 | 27,361 | 54,721 |
| Empire lease revenue - Contra payment to Empire | 16 | (27,361) | (27,361) | (54,721) |
| Empire service fee | 17 | - | - | - |
| Other | 18 | 35,855 | - | 35,855 |
| Sale of assets | 19 | - | - | - |
| **Total Cash Receipts** | | **1,061,638** | **1,076,647** | **2,138,285** |
| | | | | |
| **Operating Cash Disbursements** | | | | |
| Manufacturing - Cost of Goods Sold | 20 | - | - | - |
| Other/Third Party - Cost of Goods Sold | 21 | 84,200 | 25,926 | 110,126 |
| Advertising and marketing events | 22 | 19,300 | 50,000 | 69,300 |
| Business licenses | 23 | 14,752 | 8,500 | 23,252 |
| Dues and subscriptions | 24 | - | - | - |
| Factoring costs | 25 | - | - | - |
| Freight | 26 | 61,062 | 51,000 | 112,062 |
| Human resources | 27 | - | - | - |
| iGaming | 28 | 110,054 | 7,000 | 117,054 |
| Insurance | 29 | - | - | - |
| IT and software | 30 | 15,309 | 2,179 | 17,488 |
| Licensing fees - NSG Alliance Fee | 31 | - | - | - |
| Licensing fees - Other | 32 | 2,000 | 2,000 | 4,000 |
| Maintenance, building and grounds | 33 | - | - | - |
| Office expenses | 34 | - | - | - |
| Product and regulatory compliance / GLI | 35 | 61,538 | 61,538 | 123,077 |
| Ordinary course professionals | 36 | 10,000 | - | 10,000 |
| AGT / R&D / IP Support | 37 | 212,500 | 212,500 | 425,000 |
| Rental, buildings | 38 | 120,849 | 3,000 | 123,849 |
| Rental, other | 39 | 1,265 | - | 1,265 |
| Salaries, wages and benefits | 40 | 50,372 | 635,638 | 686,010 |
| Taxes | 41 | - | - | - |
| Travel | 42 | 11,000 | 10,500 | 21,500 |
| Utilities | 43 | 9,700 | 42 | 9,742 |
| **Total Operating Cash Disbursements** | | **783,900** | **1,069,824** | **1,853,724** |
| | | | | |
| **Operating Cash Flow** | | **277,738** | **6,823** | **284,561** |
| | | | | |
| **Non-Operating Cash Disbursements** | | | | |
| Adequate Protection | | | | |
| Bank Group | | 273,645 | - | 273,645 |
| NextStep | | - | - | - |
| PDS | | - | - | - |
| RSPenn | | - | - | - |
| Total Adequate Protection | | 273,645 | - | 273,645 |
| Vehicles, Equipment and Other | | - | 9,305 | 9,305 |
| **Total Non-Operating Cash Disbursements** | | **273,645** | **9,305** | **282,949** |
| | | | | |
| **Chapter 11 Professionals** | | | | |
| Creditors Committee Professionals | | - | - | - |
| Legal Counsel (Larson & Zirzow, LLC) | | - | - | - |
| Financial Advisor (B. Riley Advisory Services) | | - | - | - |
| Debtor's IB | | - | - | - |
| Bank Group Professionals | | - | - | - |
| US Trustee | | - | - | - |
| **Total Chapter 11 Professionals** | | **-** | **-** | **-** |
| | | | | |
| **Net Cash Flow** | | **$ 4,093** | **$ (2,482)** | **$ 1,612** |
| | | | | |
| **Beginning cash balance** | | $ 3,573,935 | $ 3,578,028 | $ 3,573,935 |
| Net cash flow | | 4,093 | (2,482) | 1,612 |
| **Ending Cash Balance** | | **$ 3,578,028** | **$ 3,575,546** | **$ 3,575,546** |

**DRAFT**

1 of 1

| Actual/Forecast | Forecast | Forecast |
|---|---|---|
| Week Number | 1 | 2 |
| Week Ending Date | 03/03/23 | 03/10/23 |

| Factored AR  - Contra payment to Factor | | |
|---|---|---|
| Agave | - | (11,705) |
| Empire | (25,659) | |
| PDS | (117,330) | (17,933) |
| RSPenn | (75,659) | (16,000) |
| **Total** | **(218,648)** | **(45,638)** |